FILED '07 SEP 27 14:52 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GAIL P. DAMEWORTH,                    )
                                      )
            Plaintiff,                )    Civ. No.  07-6162
                                      )
      vs.                             )
                                      )
                                      )    OPINION and ORDER
LINN-BENTON COMMUNITY COLLEGE,        )
EDWARD WATSON, and RITA CAVIN,        )
                                      )
            Defendants.               )
_____)

Coffin, Magistrate Judge:


      Plaintiff, formerly employed by Linn-Benton Community
College, brings a number of state and federal claims against
the college and two of its officials.  Before the court is
defendants' motion for summary judgment (#27).  For the reasons
that follow, the motion is granted in part and denied in part.

## Background

      Plaintiff worked as an instructor at Linn-Benton Community
College (LBCC) from September 1994 until 2006.  This action
stems from events that took place between February and August
of 2006, when plaintiff resigned.  During that time, plaintiff
worked in the Computer Systems Department, which was chaired by
Linda Carroll, and most of the courses she taught covered
computer application skills.

      The initial event giving rise to plaintiff's claims is the
release of the 2006-2007 class schedule, which governed
teaching assignments during the academic year.  As chair, Linda

1 Opinion and Order

Carroll was charged with developing the schedule, which was
subject to the approval of her supervisor, Dr. Jerry Wille, the
Business and Computer Systems Division Director.  Wille
notified plaintiff at a February meeting that some of her
course assignments would be changed in the upcoming schedule.
On Carroll's 2006-2007 schedule, three courses previously
taught by plaintiff were transferred to male instructors.  The
parties dispute whether one of the transferred courses was
reassigned pursuant to plaintiff's earlier wishes.  Of the two
others, one was reassigned to Becker, who (plaintiff believes)
had taught the class before, and the other was reassigned to
Swanson, who (according to Carroll) needed to supplement his
teaching load to avoid transfer to another department.  No LBCC
policies guarantee that an instructor will retain the
assignment to teach a course developed by the instructor.

Plaintiff was assigned three one-credit courses instead.
Each was an application course plaintiff had previously taught,
and she acknowledged that she was hired to teach application
courses.  Plaintiff was more qualified to do so than others,
such as Swanson.  Although some faculty view one-credit courses
as less preferable, the department chair Carroll at times
assigned such courses to herself.

Plaintiff complained about the new schedule to the
Professional Relations Committee in early March.  The written
statement included concerns about Carroll's leadership of the
department and advocated regularly rotating the chair position.
Plaintiff further stated that Carroll claimed that one reason
underlying plaintiff's new class assignments was a student

2 Opinion and Order

complaint to Wille.  Plaintiff reported that her evaluation was upcoming and she feared that Wille would retaliate against her for filing the complaint.

In mid-March, plaintiff wrote a memorandum directly to Wille seeking unmediated communication concerning student complaints and fairness guarantees in teaching assignments, and requesting that the chair position rotate regularly among faculty.  Wille responded in a letter, proffering business reasons for the class reassignments.  He also stated that he had received written complaints from six students reporting disorganization and rudeness, and stated that student complaints about plaintiff outnumbered those for other instructors in the division.

On April 6, Wille met with plaintiff again to discuss student complaints and his concerns about negative interactions between plaintiff and her colleagues and students, and he memorialized his concerns in a memorandum designed to serve as a verbal disciplinary warning.

The following day, plaintiff e-mailed a message to Carroll, Wille, and two instructors.  The message forwarded a female student's request that plaintiff serve as a resume reference and added the following text:

> A topic that has often been discussed in our dept.
> meetings as an issue we need to address is the low
> enrollment of women in our programs.  It has
> occurred to me that the changes that have been
> made for next year have the consequence that our
> Computer User Support and our Network & System
> Admin. students will now be taking most of their
> second year courses, particularly those courses
> that are 200+ course numbers, almost exclusively
> from either Dave Becker or Parker Swanson.  Women
> as instructors and role models at the upper levels

3 Opinion and Order

will now be rare for those two programs.

I've noticed this year that we have more women in our programs than I remember having in recent years despite out [sic] low enrollment. This could be because they have seen several women faculty teaching the more technical courses. If Linda and I are removed from teaching the higher levels [sic] courses, this could impact the number of females that choose to enroll in our programs.

Two days later, plaintiff issued a written rebuttal to Wille's verbal warning. Again, she voiced concerns about scheduling assignments. Plaintiff also expressed her concerns that Wille had solicited the negative student comments. On April 9, plaintiff filed a second written grievance. On April 10, plaintiff met with LBCC Vice President Ed Watson concerning the verbal warning. In the course of their discussions, Watson inquired about plaintiff's plans for retirement. Two days later, plaintiff filed a formal grievance alleging retaliation against her for filing a grievance.

On May 4, plaintiff again met with Wille. He retracted the April 6 "verbal warning" and issued a similar statement with the new title, "Documentation of Problems." Wille and plaintiff again discussed the student complaints. Afterwards, plaintiff notified Assistant Human Resources Director Kathy Withrow that she intended to file a complaint for gender discrimination and harassment against Wille, and she did so the next day.

Withrow conducted an investigation, interviewing faculty and individuals whom plaintiff advised should participate. Withrow concluded that insufficient evidence existed to substantiate the claim.

4 Opinion and Order

In July, plaintiff's performance evaluation was completed. Wille, the author of the evaluation, reported several positive aspects of plaintiff's performance but noted that improvement was required in her teaching and interactions with coworkers. Plaintiff signed the appraisal but added in writing that she did not agree with it.  Plaintiff later met with LBCC president Rita Cavin concerning the sex discrimination claim.  The following month, she submitted a letter of resignation.

In November of 2006, plaintiff filed her complaint in this case.  In plaintiff's view, defendant treated her differently from her male colleagues by assigning less preferable courses to her and subjecting her to certain disciplinary action, and then retaliated against her for complaining about the disparate treatment.  She brings the following claims: (1) disparate treatment on the basis of sex and retaliation under 42 U.S.C. §§ 2000e-2(a) and -3 and Or. Rev. Stat. § 659A.030(1), against LBCC only; (2) violation of equal protection and free speech rights, via 42 U.S.C. § 1983, against LBCC, its Vice President, Edward Watson, and its President, Rita Cavin; and (3) wrongful discharge, against LBCC only.  Defendants now move for summary judgment on all claims.  For the reasons that follow, defendants' motion is denied with respect to the federal and state statutory discrimination claims but otherwise granted.

## Legal Standard

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The initial burden is on the moving party to point out

the absence of any genuine issue of material fact.  Once the
initial burden is satisfied, the burden shifts to the opponent
to demonstrate through the production of probative evidence
that there remains an issue of fact to be tried.  Celotex Corp.
v. Catrett, 477 U.S. 317, 323 (1986).  Rule 56(c) mandates the
entry of summary judgment against a party who fails to make a
showing sufficient to establish the existence of an element
essential to that party's case, and on which that party will
bear the burden of proof at trial.  In such a situation, there
can be "no genuine issue as to any material fact," since a
complete failure of proof concerning an essential element of
the nonmoving party's case necessarily renders all other facts
immaterial.  The moving party is "entitled to a judgment as a
matter of law" because the nonmoving party has failed to make a
sufficient showing on an essential element of her case with
respect to which she has the burden of proof.  Id. at 32.
There is also no genuine issue of fact if, on the record taken
as a whole, a rational trier of fact could not find in favor of
the party opposing the motion.  Matsushita Elec. Indus. Co. v.
Zenith Radio Corp., 475 U.S. 574, 586 (1986); Taylor v. List,
880 F.2d 1040 (9th Cir. 1989).

On a motion for summary judgment, all reasonable doubt as
to the existence of a genuine issue of fact should be resolved
against the moving party.  Hector v. Wiens, 533 F.2d 429, 432
(9th Cir. 1976).  The inferences drawn from the underlying
facts must be viewed in the light most favorable to the party
opposing the motion.  Valadingham v. Bojorquez, 866 F.2d 1135,
1137 (9th Cir. 1989).  Where different ultimate inferences may

6 Opinion and Order

be drawn, summary judgment is inappropriate.  Sankovich v.
Insurance Co. of North America, 638 F.2d 136, 140 (9th Cir.
1981).

Analysis

I. Employment Discrimination Claims (against LBCC)

A.  Disparate Treatment

Plaintiff alleges that she suffered disparate treatment on
the basis of her sex in violation of Title VII and Or. Rev.
Stat. § 659A.030(1).[1]  She asserts that defendant LBCC
subjected her to disparate treatment by, among other things,
reassigning her upper division courses and issuing a negative
performance appraisal.

Under both state and federal law, in order to withstand
the summary judgment motion, plaintiff must first make a prima
facie showing that (1) she is a member of a protected class;
(2) that she performed her job satisfactorily; and (3) she was
treated differently from similarly situated individuals or
subjected to adverse employment action.  Kortan v. California
Youth Authority, 217 F.3d 1104 (9th Cir. 2000).

The court is satisfied that plaintiff has met her burden.
As a woman, plaintiff is a member of a protected class.  Id.
Where, as here, those judging the plaintiff's performance are
the same actors accused of discriminating against her, the

---

[1] 42 U.S.C. § 2000e-2(a) and Or. Rev. Stat. § 659A.030(1)(b)
prohibit discrimination "in compensation or in terms, conditions or
privileges of employment" on the basis of sex.

7 Opinion and Order

court accounts for that consideration when evaluating any challenge to this element.  Laird v. Marion County, Civ. 04-6154-HO, 2005 WL 1669828, *3 (D. Or., July 14, 2005). Defendants have not argued that plaintiff fell short of legitimate business expectations for the purpose of challenging her prima facie case, and the court therefore deems this element satisfied.

The court is further satisfied that plaintiff has met her burden on the third prong.  First, she has demonstrated that she was treated differently from her male coworkers.  Upper-level courses historically assigned to plaintiff were reassigned to men, affecting the nature of her job duties.  No such reassignments appear in the record with respect to similarly situated male instructors.

Second, plaintiff was subjected to adverse employment action.  Specifically, plaintiff asserts that, during her July 2006 review, she was subject to evaluation by every member of her department, rather than the typical practice of appraisal by two members only.  Wille required plaintiff to have each of her classes that were taught in 2006 evaluated, a practice more typical for faculty members on trial service and, according to Wille, never used for any non-trial service faculty.  Further, Wille required plaintiff to complete a self-appraisal, which was not required of others undergoing review.  At the close of the process, plaintiff received the lowest review of her LBCC career; it reported that she required improvement in two of five areas and called for improvement in her interactions with students and faculty in the summary.

8 Opinion and Order

Under Ray v. Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000), employer actions "reasonably likely to deter employees from engaging in protected activity," such as "lateral transfers, unfavorable job references, and changes in work schedules" qualify as adverse employer actions under the statute.  Likewise, subjecting an employee to an evaluation process that involves requirements not otherwise applied to others undergoing review and heightening existing evaluation requirements is also, in the court's view, "reasonably likely to deter employees from engaging in protected activity," and therefore constitutes an adverse employment action.

Under federal procedural law, which the court also applies to state law claims within the court's supplemental jurisdiction,[2] the inquiry turns to the McDonnell Douglas burden-shifting analysis.  Defendants may rebut the prima facie case by providing evidence that it had a legitimate, nondiscriminatory reason for the alleged discriminatory treatment.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  If defendants meet that burden, in order to withstand summary judgment, plaintiff must then demonstrate the existence

---

[2] Plaintiff asserts that McDonnell Douglas burden shifting does not apply to her state law discrimination claims.  The court disagrees.  A federal court sitting in diversity or exercising supplemental jurisdiction over state law claims must apply state substantive law, but a federal court applies federal rules of procedure to its proceedings. Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415 (1996); see also Erie R.R. Co. v. Tompkins, 304 U.S. 64, 92, (1938) (Reed, J., concurring in part) ("[N]o one doubts federal power over procedure.").  The Ninth Circuit has expressly held that the McDonnell Douglas burden-shifting paradigm is a federal procedural rule, which federal courts apply to summary judgment motions.  Snead v. Metropolitan Property & Cas. Ins. Co., 237 F.3d 1080 (9th Cir. 2001).  Thus, the court applies burden shifting in its analysis of plaintiff's state and federal statutory discrimination claims.

of a genuine issue of material fact on whether defendants'
proffered reasons are pretextual.

Defendants have rebutted plaintiff by putting forth
evidence of legitimate, nondiscriminatory reasons for the
disparate treatment.  With respect to the teaching
reassignments, defendants proffer business reasons for
transferring one course to Becker (who had experience teaching
the course) and the other to Swanson (who needed the course to
avoid transfer to another department).  They also explain that
plaintiff was assigned one-credit courses based on her
qualifications.  Carroll asserted that she believed that
plaintiff wanted to be relieved from teaching the transferred
courses.

Plaintiff, in turn, has met her burden to demonstrate the
existence of a jury question on the question of pretext, albeit
by a thin margin.  Pretext is proved either "(1) indirectly, by
showing that the employer's proffered explanation is unworthy
of credence because it is internally inconsistent or otherwise
not believable, or (2) directly, by showing that unlawful
discrimination more likely motivated the employer."  Chuang v.
University of California Davis, 225 F.3d 1115, 1127 (9th Cir.
2000) (internal quotation marks omitted).

Plaintiff has not mustered any direct evidence of
discriminatory intent.  However, plaintiff has pointed out
certain inconsistencies that raise a jury question on pretext.
As an initial matter, no LBCC policy requires teachers to
retain responsibility for instructing in courses that the
teacher developed or taught in the past, though the practice is

10 Opinion and Order

not unusual.  The key decisionmaker for scheduling is Carroll, a female, though the record reveals some dispute concerning whether Wille directed Carroll to direct upper division classes away from plaintiff.

Plaintiff has not demonstrated any reason to discredit defendants' assertion that Swanson was assigned CS 227 in order to avoid transfer.  Although the parties disagree about whether Carroll reasonably thought plaintiff wanted CS 275 reassigned, plaintiff does not dispute the contention that the course was reassigned to Becker because of his experience with the course, a legitimate reason for the assignment.  Rather, plaintiff relies heavily on the fact that one-credit courses which she was assigned are viewed as less preferable.  This fact alone cannot support the inference that plaintiff was assignment on the basis of her sex, particularly when Carroll has at times assigned one-credit courses to herself.

The parties disagree, however, over whether concerns about plaintiff's teaching formed a basis for the reassignments. Plaintiff testified that Wille told her that her classes were reassigned because of poor teaching.  She further argues that the explanation is illegitimate because she had received positive teaching reports, and in the case of another instructor, negative student evaluations did not produce a negative response from the administration.  Wille, however, testified that student complaints did not form a basis for the reassignment.  If teaching concerns were in fact used to justify the reassignment, and if the legitimacy of that justification is questionable, a jury could question the

11 Opinion and Order

credibility of defendants' explanation and, in the context of the entire trial record, consider whether a discriminatory motive was involved.  Further, the record demonstrates dispute concerning whether Carroll reasonably believed that she transferred CS 296 at plaintiff's request.

With respect to the enhanced performance review, defendants assert that plaintiff was the object of a disproportionate amount of student complaints, but in their reply, they do not assert that the complaints warranted the heightened review process.  Assuming that defendants would make that argument, the court would nonetheless find that a jury question exists on whether such proffered reasons would be pretextual, because the record permits an inference that performance review irregularities were imposed in reaction to plaintiff's complaint.  See Miller v. Fairchild Industries, Inc., 797 F.2d 727, 733 (9th Cir. 1986) ("in discrimination cases, an employer's true motivations are particularly difficult to ascertain" and can present an "elusive factual question ... incapable of resolution on summary judgment").


B.  Retaliation

Plaintiff further alleges that she experienced adverse employment actions in retaliation for her complaints that LBCC discriminated against her on the basis of her sex.[3]  In order to establish her prima facie case of retaliation under Title

---

[3] 42 U.S.C. § 2000e-3 and Or. Rev. Stat. § 659A.030(1)(f) prohibit discrimination against a person who "filed a complaint" for discrimination on the basis of sex.

12 Opinion and Order

VII, plaintiff must establish that she acted to protect her
Title VII rights, that an adverse employment action was then
taken against her, and that a causal link exists between those
two events.  Steiner v. Showboat Operating Co., 25 F.3d 1459,
1465 (9th Cir. 1994).  The causal link may be established by an
inference derived from circumstantial evidence, "such as the
employer's knowledge that the [employee] engaged in protected
activities and the proximity in time between the protected
action and the allegedly retaliatory employment decision."
Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir.1987).
"Essential to a causal link is evidence that the employer was
aware that the plaintiff had engaged in the protected
activity."  Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th
Cir. 1982).

Plaintiff has met that burden.  She acted to protect her
rights Title VII by opposing actions she deemed discriminatory,
e.g., by filing a formal sex discrimination complaint on May 5,
2006.  The target of her complaint, Wille, was Division
Director, and plaintiff fully apprised him that she would be
making the complaint.  Plaintiff asserts that she was subjected
to retaliation after that event by undergoing an overly
rigorous evaluation procedure.  As explained, above, that
procedure could constitute an adverse employment action.
Because the review occurred shortly after plaintiff filed her
sex discrimination complain with human resources, I find that
the causal link is also satisfied in plaintiff's prima facie
case.

Under federal procedure, the burden of production then

shifts to defendants to advance legitimate, non-retaliatory reasons for any adverse actions taken against plaintiff. Miller, 797 F.2d at 730-31.  Here again, defendants assert that plaintiff was the object of a disproportionate amount of student complaints, but in their reply, they do not assert that the complaints warranted the heightened review process. Assuming that defendants would make that argument, the court would nonetheless find that a jury question exists on whether such proffered reasons would be pretextual, for the same reason explained above.

For these reasons, summary judgment on plaintiff's statutory discrimination claims is not appropriate.

II.  Section 1983 Claims

A.  Equal Protection (Class of One); Equal Protection Sex Discrimination

Plaintiff asserts that she comprises a "class of one," and that defendants' alleged discriminatory actions violate her right to equal protection under the law.  Plaintiff concedes, however, that, under current Ninth Circuit precedent the class-of-one theory does not apply in the public employment context. See Engquist v. Oregon Dept. of Agriculture, 478 F.3d 985, 996 (9th Cir. 2007).  To the extent that plaintiff asserts a second claim for violation of the equal protection guarantee based on sex discrimination, the court observes that plaintiff does not demonstrate having been denied the equal protection of the law outside of her "class of one," and therefore resolves this

14 Opinion and Order

count under <u>Engquist</u>.  The court accepts plaintiff's concession and grants defendants' motion for summary judgment on this claim.

B.   First Amendment

Plaintiff alleges that defendants restricted her First Amendment right to freedom of speech when they allegedly retaliated against her for (1) publishing an e-mail message concerning enrollment of female students, and (2) filing notice of a Tort Claim and administrative complaints associated with her employment dispute concerning her supervision and class assignments.  Whether plaintiff's speech is protected under the First Amendment is a question of law, which the court evaluates under the standard set forth in <u>Garcetti v. Ceballos</u>, __ U.S. __, 126 S. Ct. 1951, 1956 (2006).

Under <u>Garcetti</u>, expression made pursuant to a public employee's official duties, or "speech that owes its existence to a public employee's professional responsibilities," does not constitute speech made in the employee's capacity as a citizen speaking out on a matter of public concern.  126 S. Ct. at 1960.  As such, it may be restricted by the employer and cannot form the basis of a free expression claim.  In this case, it is difficult to escape the conclusion that plaintiff's statements owed their existence to her professional responsibilities.  Thus, she may not go forward to argue that any retaliation based on those statements infringes her rights under the First Amendment.

Plaintiff's e-mail message set forth her views on the

15 Opinion and Order

matter of whether enrollment among female students in the
department's courses would be jeopardized by a decline in
female instructors teaching upper division courses. Her choice
of words exposes her concern for the issue within existing
intra-department dialogues, and her concerns are confined to
the question of whether department enrollments will vary
depending on teaching assignments:

> A topic that has often been discussed in our
> dept. meetings as an issue we need to address is
> the low enrollment of women in our programs. It
> has occurred to me that the changes that have
> been made for next year have the consequence that
> our Computer User Support and our Network &
> System Admin. students will now be taking most of
> their second year courses, particularly those
> courses that are 200+ course numbers, almost
> exclusively from either Dave Becker or Parker
> Swanson. Women as instructors and role models at
> the upper levels will now be rare for those two
> programs.
>
> I've noticed this year that we have more women in
> our programs than I remember having in recent
> years despite out [sic] low enrollment. This
> could be because they have seen several women
> faculty teaching the more technical courses. If
> Linda and I are removed from teaching the higher
> levels [sic] courses, this could impact the
> number of females that choose to enroll in our
> programs.

I cannot hold that these statements evidence the views of a
citizen speaking out on a matter of public concern. To be
sure, gender parity is a pervasive societal concern, but this
message confines the matter to community college course
enrollment and was offered in plaintiff's professional role to
coworkers, department chair, and division director.

The court's determinations are consistent with the

16 Opinion and Order

concerns of the Court in <u>Garcetti</u>.  The court acknowledges, as the United States Supreme Court did, that "[e]xposing governmental . . . misconduct is a matter of considerable significance[, and] public employers should, as a matter of good judgment, be receptive to constructive criticism offered by their employees."  <u>Id.</u> at 1962 (internal quotation marks and citations omitted).  However, "[t]he dictates of sound judgment are reinforced by the powerful network of legislative . . . available to those who seek to expose wrongdoing."  <u>Id.</u>  Here, any alleged discrimination meriting redress is actionable under state and federal law.

Similarly, I cannot hold that plaintiff's administrative filings are protected speech under <u>Garcetti</u>.  Plaintiff has not pointed the court to any particular statements that she alleges warrant First Amendment protection.  To the extent that plaintiff refers to administrative and legal filings concerning disciplinary action and her disputes concerning teaching assignments and her chair, plaintiff was again speaking within the scope of her work as a public employee.  Moreover, it is unclear how, if at all, the record indicates that any of the alleged adverse employment actions were taken in response to speech that plaintiff asserts should be protected.  Plaintiff has not rebutted defendants' demonstration that the record does not produce a genuine issue of material fact with respect to causation.  Summary judgment in favor of all defendants on this claim is appropriate.

III.  Wrongful Discharge (against LBCC only)

17 Opinion and Order

Plaintiff bases her wrongful discharge claim on the theory that she was constructively discharged after having exercised her legal right to complain about sex discrimination. Plaintiff's wrongful discharge claim does not provide an avenue of relief in this action. As an initial matter, the record does not support the conclusion that LBCC created intolerable or infeasible working conditions that would amount to constructive discharge. See McGanty v. Stadenraus, 901 P.2d 841, 853-54 (Or. 1995) (describing elements of constructive discharge).

Aside from problems with the merits of plaintiff's claim, any relief available to plaintiff by means of a wrongful discharge claim is preempted by the availability of adequate statutory remedies. Oregon law understands wrongful discharge as "an interstitial tort, designed to fill a remedial gap where a discharge in violation of public policy would be left unvindicated." Dunwoody v. Handskill Corp., 60 P.3d 1135, 1139 (Or. App. 2003). Accordingly, a wrongful discharge claim is preempted by the availability of statutory remedies where the legislature has provided (1) a remedy "adequate to protect both the interests of society . . . and the interests of employees," Brown v. Transcon Lines, 588 P.2d 1087, 1095 (Or. 1978), (2) which the legislature intended "to abrogate or supersede any common law remedy for damages," Holien v. Sears, Roebuck and Co., 689 P.2d 1292, 1300 (Or. 1984). Where "the statute is silent with respect to the legislature's intent . . . in the absence of an explicit statement, the existence of adequate remedies can be seen implicitly to establish

18 Opinion and Order

exclusivity." <u>Olsen v. Deschutes County</u>, 127 P.3d 655, 661
(Or. App.), <u>rev. denied</u>, 136 P.3d 1123 (Or. 2006).  "[U]nder
Oregon law, an adequate existing federal remedy may bar a
common law wrongful discharge claim." <u>Draper v. Astoria School
Dist. No. 1C</u>, 995 F. Supp. 1122, 1131 (D. Or. 1998).

Here, wrongful discharge is preempeted by the availability
of federal statutory remedies under section 1983.  Another of
plaintiff's claims in this action, the free speech based
section 1983 claim, asserts seeks redress for constructive
discharge due to speech that plaintiff characterized as
complaints about sex discrimination, namely her enrollment-
related e-mail message, administrative complaints, and Tort
Claims notice.  As such, it seeks to remedy the same alleged
conduct underlying the wrongful discharge claim.

Similar facts were presented in <u>Minter v. Multnomah
County</u>, 2002 WL 31496404, at *14 (D. Or. May 10, 2002)
(Findings and Recommendation adopted June 25, 2002):

> [B]oth the § 1983 and wrongful discharge claims
> seek to remedy the same alleged conduct, namely
> the termination of [the plaintiff's] employment
> because of her protected speech. The § 1983 claim
> alleges that defendants infringed upon her First
> Amendment right to free speech by terminating
> her.  The wrongful discharge claim similarly
> alleges that [the defendant] fired [the
> plaintiff] for performing the important public
> duty of exercising her First Amendment right to
> free speech.  The § 1983 claim provides the same
> remedies as the wrongful discharge claim for the
> same violation of [plaintiff's] First Amendment
> right. . . . There is no need for a state common
> law claim to remedy a federal right which is
> fully protected by a federal claim.  This court
> recognizes that a claim under § 1983 may pose
> some hurdles for plaintiffs that a wrongful
> discharge claim may not, such as overcoming a

19 Opinion and Order

> qualified immunity defense.  Even so, it would be
> anomalous for a plaintiff to have more rights
> under a state common law claim than under federal
> law to vindicate the same federal right.

Provided plaintiff could meet the "hurdles" presented by her free speech based section 1983 claim, the measure of damages available to her would be "more generous than it would be under a wrongful discharge claim," inasmuch as the award is exempt from the damages cap under the Oregon Tort Claims Act and 42 U.S.C. § 1988 provides for an award of attorney fees. See Draper, 995 F. Supp. at 1131.  As such, available remedies under the federal claim preclude the plaintiff from claiming wrongful discharge.

It is of no consequence that plaintiff's free speech based section 1983 claim has not withstood summary judgment.  As Magistrate Judge Stewart has explained, "inquiring into the adequacy of remedies as a matter of law does not first require a determination as to the merits of the claims.  Instead, the only inquiry is whether an alternative claim, if proven, provides an adequate remedy."  Minter, 2002 WL 31496404, at *14.

In this case, adequate remedies were presented by plaintiff's free speech based section 1983 claim.  Defendants' motion for summary judgment is granted on the wrongful discharge claim.

IV.  Punitive Damages

Defendants further move to dismiss plaintiff's punitive damages claims.  With respect to the two remaining claims based

20 Opinion and Order

in state and federal sex discrimination statutes and brought
against public entities, punitive damages are unavailable.    42
U.S.C. §§ 1981a(b)(1); 1983; Or. Rev. Stat. § 30.270(2).

<u>Conclusion</u>

Defendants' motion for summary judgment (#27) is granted
in part and denied in part.

IT IS SO ORDERED.

Dated this **27** day of September, 2007.

_____
THOMAS M. COFFIN
United States Magistrate Judge

21 Opinion and Order